254 N.J. Super. 133 (1992)
603 A.2d 108
JOHN HAGRISH, AN INDIVIDUAL, AND SALLY J. SOHIGIAN (FORMERLY "HAGRISH"), AN INDIVIDUAL, PLAINTIFFS-APPELLANTS,
v.
EDWIN OLSON AND JOHANNA OLSON, HUSBAND AND WIFE, THE ESTATE OF JOHANNA OLSON, DECEASED, MICHAEL F. RICCARDELLI, AN INDIVIDUAL, FRANK W. GASIOROWSKI, AN INDIVIDUAL, AND JOHN D. DEMASSI, AN INDIVIDUAL, (F/K/A "RICCARDELLI, GASIOROWSKI & DEMASSI"), DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 4, 1991.
Decided February 25, 1992.
*135 Before Judges PETRELLA, R.S. COHEN and ARNOLD M. STEIN.
Donald P. Fedderly, attorney for appellants.
Howard C. Trueger, attorney for respondents Edwin Olson, Johanna Olson and the Estate of Johanna Olson; Voorhees & Acciavatti, attorneys for respondents Riccardelli, Gasiorowski and DeMassi (Robert W. McAndrew and Howard C. Trueger, of counsel and on the joint brief).
The opinion of the court was delivered by ARNOLD M. STEIN, J.A.D.
Plaintiffs appeal the Law Division's order denying their motion to enforce a claimed settlement with defendants. The trial judge concluded that there "never was a binding contract to settle this case...." We reverse and remand for entry of an order enforcing the settlement and dismissing the case.
Plaintiffs purchasers sued defendants sellers, the Olsons, and the Olsons' law firm, Riccardelli, Gasiorowski and DeMassi, seeking return of a $31,990 deposit they had made on the house sold them by defendants. The case went to trial and a jury *136 returned a verdict in plaintiffs' favor, finding by special interrogatory that plaintiffs did not breach the real estate contract.
The trial judge set aside the verdict and granted defendants' motion for judgment notwithstanding the verdict pursuant to R. 4:40-2(b).
Before plaintiffs filed an appeal from this ruling, the attorneys for the parties exchanged communications which they and their clients obviously thought resolved the matter. The terms were simple: defendants would pay plaintiffs $7,000; in return, plaintiffs would abandon the appeal.
On June 25, 1990, plaintiffs' lawyer, Donald P. Fedderly, wrote defendants' lawyers (Robert W. McAndrew of Voorhees & Acciavatti for the lawyers and Howard C. Trueger for the Olsons):
This will confirm our settlement discussions of last week in which it was agreed that the captioned matter would be settled by your clients paying to John Hagrish the total sum of $7,000.00.
On June 26, Trueger responded to Fedderly:
This letter will confirm that the above referenced matter has been settled whereby defendants shall pay to the plaintiffs the sum of $7,000.00.
....
... We, Mr. McAndrew and I, will need general releases from Mr. Hagrish and Ms. Sohigian before disbursing the settlement funds.
Things then became a little testy. On the same day, Trueger wrote to the trial judge:
I understand that Donald P. Fedderly, Esq. has requested the Court not to execute the Order Directing the Clerk of the Superior Court of New Jersey to Disburse Funds on Deposit submitted to you by letter dated June 22, 1990, until he has received a letter from both Mr. McAndrew and me confirming the settlement amount. While the case has in fact been settled, I am of the opinion that Mr. Fedderly's request to the Court is improper, if not insulting. I hereby request that the Order be signed, filed, and a copy be sent to this office without regard to Mr. Fedderly's request. [emphasis added].
On July 2, McAndrew wrote Fedderly:
At this time, please be advised that I am in accord with the statements made in Mr. Trueger's letter of June 26, 1990 to the effect that we will require general releases from John Hagrish and Sally J. Sohigian in favor of Riccardelli, Gasiorowski and DeMassi, attorneys at law and Michael Riccardelli, an individual, Frank W. Gasiorowski, an individual, and John DeMassi, an individual. *137 As soon as I have received properly executed releases, I will arrange with Mr. Trueger to forward the settlement draft directly to your attention made payable to John Hagrish and Sally J. Sohigian and Fedderly and Shaw, attorneys. [emphasis added].
In the meantime, on June 28, Fedderly had written Trueger and McAndrew:
I have drafted Releases for the signatures of Sally Sohigian and John Hagrish, and am in the process of obtaining same. Kindly prepare reciprocal Releases for your clients' execution so that we may exchange same sometime next week.
On July 16, McAndrew responded to Fedderly's letter with a copy to Trueger:
In making an order to settle this case on behalf of my clients, it was never contemplated that my clients would execute releases in favor of your clients. Therefore, I will not be asking them to execute releases in favor of your clients as any part of this settlement.
In November 1990, long after plaintiffs' time for appeal from the judgment notwithstanding the verdict had expired, Fedderly moved before the Law Division to enforce the $7,000 settlement. On November 27, Trueger wrote Fedderly, with copy to McAndrew:
We received your motion papers on November 23, 1990, more than five (5) months after we asked you for a simple general release from John Hagrish and Sally Sohigian. I have not received that release. There is no question that we always requested a release from the plaintiffs from the outset on behalf of Mr. Olson. If your clients cannot or will not provide a release, please let me know, in writing.
We do not think this case needs another motion.
If we do not receive the release from you by Wednesday, November 28, 1990, we will resist your motion.
We disagree with the trial judge's conclusion that there was never a binding contract of settlement. The parties had reached a settlement agreement with certain and specific terms: defendants would pay plaintiffs $7,000 and plaintiffs would not pursue their appeal of the judgment notwithstanding the verdict. The case would be over when the parties fulfilled these simple conditions. Absent unusual circumstances, the courts should enforce executory agreements to settle litigation. Jannarone v. W.T. Co., 65 N.J. Super. 472, 476-77, 168 A.2d 72 (App.Div. 1961).
*138 Plaintiffs' failure to execute release documents did not void the original agreement, nor did it render it deficient from the outset. Execution of a release was a mere formality, not essential to formation of the contract of settlement. "So long as the basic essentials are sufficiently definite, any gap left by the parties should not frustrate their intention to be bound." Berg Agency v. Sleepworld-Willingboro, Inc., 136 N.J. Super. 369, 377, 346 A.2d 419 (App.Div. 1975).
In the absence of opposing claims such as counterclaims, we would not expect the attorney for the releasor to demand cross-releases from the paying party. Fortunately for plaintiffs, their attorney requested reciprocal releases from these defendants. It turned out that one of the lawyer defendants had a hidden agenda. According to certifications filed in opposition to plaintiffs' motion to enforce the settlement, defendant Gasiorowski never intended to provide a release to plaintiffs because he did not wish to forfeit his right to press a claim against plaintiffs under the frivolous litigation statute, N.J.S.A. 2A:15-59.1.[1]
There was a meeting of the minds despite Gasiorowski's undisclosed intention to preserve a right to maintain a lawsuit against plaintiffs. The parties' objective intent governs. A contracting party is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she has a different, secret intention from that outwardly manifested. Looman Realty Corp. v. Broad St. Nat. Bank of Trenton, 74 N.J. Super. 71, 82, 180 A.2d 524 (App.Div. 1962).
Furthermore, the notion of an independent post-settlement or post-judgment frivolous lawsuit action is itself frivolous. The statute requires that applications for litigation costs must be made in the same case in which the applicant prevails. *139 N.J.S.A. 2A:15-59.1c states: "A party seeking an award ... shall make application to the court which heard the matter." The judge who heard the underlying case must make findings that the nonprevailing party acted in bad faith. N.J.S.A. 2A:15-59.1b.
The purpose of this statute is to limit, not perpetuate, unnecessary lawsuits. Moreover, such an independent claim would also conflict with the entire controversy doctrine. R. 4:30A.
We again voice our disapproval of attorneys who settle cases without disclosing to the other side the intention of their clients to press undisclosed claims against a settling party. Garde v. Wasson, 251 N.J. Super. 608, 612, 598 A.2d 1253 (App.Div. 1991). Such conduct debases the legal profession.
There is no need for further extended proceedings. There is no longer a need for the exchange of releases. The case should come to an end. The order is reversed and the matter is remanded to the Law Division for entry of an order:
1. Requiring immediate payment to plaintiffs of $7,000 plus interest from August 1, 1990, at a rate to be fixed pursuant to R. 4:42-11(a)(ii);
2. Authorizing withdrawal of the required payment to plaintiffs from any funds held in escrow by the Clerk of the Superior Court or elsewhere; and
3. Dismissing with prejudice any and all claims involving these parties which arise from the litigation.
Reversed and remanded for entry of an order consistent with this opinion.
NOTES
[1] At oral argument on the settlement enforcement motion, counsel for the lawyers expressly stated their clients did not intend to pursue such a claim