814 A.2d 1108 (2002)
357 N.J. Super. 185
William T. SCHOR, Plaintiff-Respondent/Cross-Appellant,
v.
FMS FINANCIAL CORPORATION, Defendant-Appellant/ Cross-Respondent.
Steven R. Brick, Plaintiff-Respondent,
v.
FMS Financial Corporation, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Decided December 30, 2002.
Submitted December 3, 2002.
*1110 Dilworth Paxson, attorneys for appellant (Richard J. Jubanyik, Cherry Hill, on the brief).
Howard N. Sobel, Voorhees, attorney for respondent William T. Schor (Mr. Sobel with Jason L. Lomax on the brief).
Archer & Greiner, attorneys for respondent Steven R. Brick (Steven K. Mignogna, Haddonfield, on the brief).
Before Judges STERN, COBURN and ALLEY.
*1109 The opinion of the court was delivered by ALLEY, J.A.D.
Defendant, FMS Financial Corporation (FMS), appeals from two amended final judgments entered on July 6, 2001, after summary judgment had been awarded to plaintiffs. The orders required FMS to transfer 11,583 shares of its common stock to plaintiff Brick, and to pay $116,022.99 to plaintiff Schor, pursuant to rights to purchase FMS stock that the trial court had determined that they respectively had held under defendant's stock option plan. Plaintiffs also were awarded interest, and counsel fees were awarded pursuant to R. 4:58-1, the offer of judgment rule.

I
Plaintiffs, William T. Schor and Steven R. Brick, each served as directors of Land Financial Services (LFS) starting in November 1987. Schor remained a director of LFS through August 1990, and Brick did so through February 1991. At relevant times, FMS owned Farmers and Mechanics Bank (Bank) and LFS was a subsidiary of the Bank. On November 15, 1988, FMS adopted a stock option agreement for non-incentive stock options known as the "1988 Stock Option and Incentive Plan" (Plan).
Schor and Brick did not attempt to exercise their options until May 18, 1998, and October 14, 1998, respectively. FMS rejected these requests.
FMS took the position that plaintiffs had been required to exercise their stock options within ninety days after leaving the LMS Board. Although paragraph four of the Plan states, "[t]his Option may not be exercisable for more than ten (10) years from the date of grant of this Option[,]" paragraph three of Section 5 of the Plan states in part that "[s]uch Options may be exercised only while the Optionee is a Director of the Corporation or within 90 days after termination of the Optionee's status as a Director." Under paragraph 2(g) of the Plan, "Corporation" is defined as "FMS Financial Corporation, a holding company of the Bank." From 1991, FMS business records reflected the understanding that Schor's and Brick's respective options had expired ninety days after their resignations as LMS Directors. Schor *1111 and Brick apparently never saw the Plan until they tried to exercise their options.
After litigation was commenced, Schor was awarded $158,783 in arbitration under R. 4:21A on December 3, 2000. FMS filed a notice of rejection and a demand for trial de novo on December 22, 2000. The notice was not actually received by Schor's counsel until January 15, 2001, after a certified mail delivery attempt on December 26, 2000, failed because that attorney had elected to close his office that day, which was neither a weekend nor a legal holiday. Schor filed a motion to vacate the FMS request for trial de novo and to enter judgment in accordance with the arbitration award on February 14, 2001, which was denied on March 2, 2001. Schor's motion for summary judgment was granted on April 24, 2001 as to the issue of liability, and judgment in favor of Schor was entered on May 11, 2001, for the sum of $202,479.82, representing the sum of $166,022.99 plus interest of $36,456.83. An amended order was entered on July 6, 2001, in favor of Schor for $14,007.87 in counsel fees, bringing the total to $218,663.27.
With respect to the claims of the other plaintiff, Brick served an offer of judgment on FMS for the transfer of 11,583 shares of stock on January 19, 2001, which FMS did not accept. Brick then moved for summary judgment against FMS, and the motion was granted on February 16, 2001. The court directed that FMS transfer 11,583 shares of its stock to Brick, and on July 6, 2001, entered amended judgment that also awarded Brick $15,798.02 for counsel fees; $3,474.90 for dividends which should have been paid from October 14, 1998, the date he attempted to exercise his option; and $379.42 in pre-judgment interest.

II
We first address the substantive dispute in this case, which centers on Paragraph 5 of the Plan and specifically the effect of its definition of the word "Corporation" as FMS. The trial court granted summary judgment to both plaintiffs, perceiving no ambiguity and no need to look to extrinsic evidence. Plaintiffs contend that because "Corporation" is defined as FMS and not LMS, the limitation of the right to exercise the options to a period of ninety days after their status as directors ended is inapplicable to them, inasmuch as they were not directors of FMS, but of LMS. FMS contends, however, that the term "Corporation" includes each of the companies that were part of the Plan, not merely FMS, and that to read it otherwise would destroy the intent of the Plan and create ambiguity because of inconsistencies it would create. It argues that summary judgment should not have been granted because the contract contained ambiguous terms that required a jury to interpret and that extrinsic evidence, not just the words of the documents, should be examined.
On a motion for summary judgment, the trial judge must determine whether any material issues of fact are in dispute. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995). The judge must decide whether
the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party[.] If there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a "genuine" issue of material fact for purposes of Rule 4:46-2.

[Ibid.]
*1112 On appeal, we use the same standard to determine whether there was a genuine issue of fact. Prudential Property & Cas. Ins. v. Boylan, 307 N.J.Super. 162, 167, 704 A.2d 597 (App.Div.1998).
The pertinent principles of contractual construction are straightforward. The court makes the determination whether a contractual term is clear or ambiguous. Nester v. O'Donnell, 301 N.J.Super. 198, 210, 693 A.2d 1214 (App.Div.1997) (quoting Kaufman v. Provident Life and Cas. Ins. Co., 828 F.Supp. 275, 282 (D.N.J. 1992), aff'd, 993 F.2d 877 (3d Cir.1993)). "An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonable alternative interpretations[.] To determine the meaning of the terms of an agreement by the objective manifestations of the parties' intent, the terms of the contract must be given their `plain and ordinary meaning.'" Ibid. (quoting Kaufman, supra, 828 F.Supp. at 283). The court should examine the document as a whole and the "court should not torture the language of [a contract] to create ambiguity." Ibid. (quoting Stiefel v. Bayly, Martin & Fay, Inc., 242 N.J.Super. 643, 651, 577 A.2d 1303 (App.Div.1990)).
A party that uses unambiguous terms in a contract cannot be relieved from the language simply because it had a secret, unexpressed intent that the language should have an interpretation contrary to the words' plain meaning. Indeed, that would be contrary to settled law. We recently reiterated this "long-settled principle[ ]" that a party to a contract "is bound by the apparent intention he or she outwardly manifests to the other party. It is immaterial that he or she had a different, secret intention from that outwardly manifested." Domanske v. Rapid-American Corp. 330 N.J.Super. 241, 246, 749 A.2d 399 (2000), quoting Hagrish v. Olson, 254 N.J.Super. 133, 138, 603 A.2d 108 (App.Div.1992). Moreover, in Karl's Sales and Service, Inc. v. Gimbel Bros., Inc., 249 N.J.Super. 487, 493, 592 A.2d 647 (App.Div.), certif. denied, 127 N.J. 548, 606 A.2d 362 (1991), we cautioned that:
where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written. Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43, 161 A.2d 717 (1960); Levison v. Weintraub, 215 N.J.Super. 273, 276, 521 A.2d 909 (App.Div.), certif. denied, 107 N.J. 650, 527 A.2d 470 (1987). The court has no right "to rewrite the contract merely because one might conclude that it might well have been functionally desirable to draft it differently." Id.; Brick Tp. Mun. Util. Auth. v. Diversified R.B. & T., 171 N.J.Super. 397, 402, 409 A.2d 806 (App. Div.1979). Nor may the courts remake a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of the other. James v. Federal Ins. Co., 5 N.J. 21, 24, 73 A.2d 720 (1950).
On the other hand, when in the context of the document itself and the transaction to which it pertains the terminology employed, despite a facile simplicity, actually is not free from doubt as to its meaning, the party is permitted to introduce proof of extrinsic circumstances bearing on the alleged proper interpretation of the language used. See, as one recent illustration, Great Atlantic & Pacific Tea Co. v. Checcio, 335 N.J.Super. 495, 501, 762 A.2d 1057 (App.Div.2000) (holding the plaintiff should have been allowed to "present[] evidence of the facts and circumstances surrounding the execution" of a lease). We note, moreover, that it makes no sense for the rule to be different if the document to be construed has resulted *1113 from negotiations, as occurred in Checcio, than when it is presented by one side to the other in essentially a non-negotiable form, as we take it occurred with FMS and plaintiffs.
We conclude that FMS should be allowed to offer extrinsic evidence to demonstrate the meaning of the Plan. Accepting plaintiffs' interpretation, the Plan would create an inequality in the ability of a director's ability to exercise a stock option, because a FMS director would be given a shorter time to do so than a director of a subsidiary such as FMS. The very unreasonableness of a contention that FMS, which prepared the documents, would want to limit its own directors to a ninety-day exercise period while allowing its subsidiaries' directors to have ten years, bespeaks that the construction that plaintiffs put on the definition of "Corporation" is tortured and is reflective of an inherent ambiguity in the definition. Nowhere in the document is there a stated intent that the Plan was to apply equally to all companies, but that is the arguable intent, and the definition's inconsistency therewith in our view opens the door to the use of extrinsic evidence to explain the true purpose of the language employed. FMS asserts that the Plan was initially intended for its own directors, but was later enlarged to include the subsidiaries, and that this explains the mistake in its use of FMS to mean "Corporation." Even if FMS's arguments on intent are not ultimately persuasive at trial, the trial court should nevertheless admit and consider the extrinsic evidence.
Plaintiffs contend that even if the terms are found ambiguous they should still prevail because any ambiguity will be construed against FMS. "[W]here an ambiguity appears in a written agreement, the writing is to be strictly construed against the party preparing it." Orange Township v. Empire Mortgage Serv., Inc., 341 N.J.Super. 216, 227, 775 A.2d 174 (App. Div.2001) (quoting Karl's Sales, supra, 249 N.J.Super. at 493, 592 A.2d 647.). This, of course, is not dispositive, although FMS is the drafter, and any ambiguity certainly will be construed against it. That an ambiguity would be construed against the drafter does not act as a bar to prevent FMS from even introducing its extrinsic evidence. Instead, it only goes to the interpretive function of the trier of fact in determining the true meaning of the language employed.
Plaintiffs would have us believe that a party's own use of a defined word prevents a look beneath the surface. That simply is not correct. A word used in a contract is not a verbal form of kryptonite, rendering powerless one who would question whether it truly expresses the intent of a transaction. When, as here, the overall context of the transaction makes the proffered interpretation of the word plainly dubious, the court should look to extrinsic evidence to see whether that interpretation expresses the actual intent of the party who used the language. As we stated in Checcio, supra, 335 N.J.Super. at 502, 762 A.2d 1057,
resolution of [the parties'] contractual dispute requires more than just looking at the words of Article 8 in the Second Amendment and the deal letter written by Dicker. The parties should have an opportunity to present a factfinder with the circumstances surrounding the execution of the Second Amendment. The construction of a written contract is usually a legal question for the court, but where there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation, then the doubtful provision should be left to the jury. Michaels v. Brookchester, Inc., 26 N.J. 379, 387, 140 A.2d 199 (1958); Garden *1114 State Buildings v. First Fidelity Bank, 305 N.J.Super. 510, 525, 702 A.2d 1315 (App.Div.1997), certif. denied, 153 N.J. 50, 707 A.2d 153 (1998).
Pursuant to Brill, supra, when the evidence is sufficiently one-sided that it may be said one party should prevail as a matter of law, summary judgment is appropriate. Where, however, the competent evidential materials, viewed in a light most favorable to the party opposing the motion, are sufficient to permit a rational factfinder to resolve disputed issues in favor of the party in opposition, summary judgment should not be granted. 142 N.J. at 540, 666 A.2d 146. In our view, the proofs in the present matter are not sufficient to justify summary disposition in favor of either party.
We do not venture to predict how the trier of fact will resolve this issue of interpretation. If it appears from the evidence that plaintiffs are contending for a result to which they have no right in justice because it was never intended that they would have a greater rights under the Plan than the directors of FMS itself, we trust that this will not be lost on the factfinder.

III
We next turn to the remaining issues on this appeal, which are procedural in nature. First, Schor claims that the trial judge erred in allowing FMS to bring a motion for a trial de novo when his attorney received service after the thirty-day time limit. It appears undisputed that FMS filed its motion within time on December 22, 2000, and that the notice should have been received in time, because on December 26, 2000, a business day on which the postal service attempted to deliver the notice by certified mail, Schor's attorney elected to close his office and the notice could not be delivered by certified mail. That attorney did not receive actual notice until January 15, 2001, well after the thirty-day limitation. Service by certified mail is not deemed complete until receipt. Stegmeier v. St. Elizabeth Hosp., 239 N.J.Super. 475, 481, 571 A.2d 1006 (App. Div.1990).
Here the trial court found no prejudice to Schor because there had been substantial compliance by FMS. We see no basis for interfering with this determination. In any event, that no one was in the law office on December 26, 2000, to receive delivery, and that the Postal Service evidently erred in failing to redeliver the returned certified letter before January 15, 2001, cannot be laid at the doorstep of FMS. Moreover, the position of Schor's counsel, that he did not receive delivery of the notice because he chose to close his office that day, appears too close to that of the proverbial parent-murderer pleading for mercy as an orphan to have sufficient merit that would warrant further discussion. Thus, as to this determination, we affirm both on the merits and pursuant to R. 2:11-3(e)(1)(E).
Next, Schor also asks that the fifty-day limitation for confirmation of an arbitration award be extended. Thus Schor, who contends that the thirty-day limitation on a motion for a trial de novo should be construed strictly, also asserts that the fifty-day time limitation for a motion to confirm an arbitration award should be construed liberally.
"[A] motion to vacate a dismissal for failure to file a timely motion to confirm an arbitration award should be viewed with great liberality." Allen v. Heritage Court Assoc., 325 N.J.Super. 112, 118, 737 A.2d 1158 (App.Div.1999). The confirmation of the award is merely a "pro forma step to convert the award into a judgment, and ... `in most cases only the rights of the dilatory prevailing party will be affected by his delay in applying to the *1115 court for confirmation.'" Ibid. (citations omitted). "Relaxation of the fifty-day time period is consistent with public policy" because it "promotes the finality of an arbitration award." Elrac, Inc. v. Britto, 341 N.J.Super. 400, 405, 775 A.2d 547 (App. Div.2001) (quoting Sprowl v. Kitselman, 267 N.J.Super. 602, 610, 632 A.2d 540 (App.Div.1993).) Here, however, we think that Schor's inequitable and hypertechnical position with respect to the FMS de novo motion has compromised his claim to indulgent treatment of his mistakes.
We pointed out in Allen, supra, 325 N.J.Super. at 121, 737 A.2d 1158, that a "cavalier attitude" toward R. 4:21A-6(b) "should be discouraged[,]" and the same purpose can be extended here to Schor's "cavalier attitude" toward the rules respecting service of FMS's de novo demand. He who seeks liberality should not object to the extension of liberality. We see no mistaken exercise of discretion in the trial court's ruling on this point.
Finally, Schor and Brick each seek additional fees and costs related to the appeal and summary judgment motion. They argue that because a settlement was offered and rejected, and both respondents won awards greater than their settlement offer, they are entitled to attorney costs and fees under R. 4:58-2. This assertion fails in view of the outcome of this appeal, inasmuch as neither plaintiff any longer possesses a judgment in his favor.

IV
We reverse the grant of summary judgment as to both plaintiffs but affirm the grant of FMS's trial de novo motion application and the denial of Schor's application for confirmation of the arbitration award. We remand and do not retain jurisdiction.