**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2809-15T4

HARRY B. SCHEELER, JR.,

    Appellant,

v.

GALLOWAY TOWNSHIP,

    Respondent.

_____

        Submitted September 6, 2017 — Decided November 15, 2017

        Before Judges Rothstadt and Vernoia.

        On appeal from the New Jersey Government Records Council, Complaint Nos. 2015-1 and 2015-22.

        Pashman Stein Walder Hayden, PC, attorneys for appellant Harry B. Scheeler, Jr. (CJ Griffin, of counsel and on the briefs; Michael J. Zoller, on the briefs).

        Fitzgerald & McGroarty, PA, attorneys for respondent Galloway Township (Michael J. Fitzgerald, of counsel and on the brief).

        Christopher S. Porrino, Attorney General, attorney for the Government Records Council (Debra A. Allen, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Complainant Harry B. Scheeler, Jr., appeals from a final decision of the Government Records Council (GRC or Council) dismissing two complaints alleging defendant Galloway Township (Galloway or Township) denied access to a purported settlement agreement in violation of the Open Public Records Act (OPRA), N.J.S.A. 47:1A- to -13. We reverse and remand for further proceedings.

I.

The record shows that Galloway and its mayor were sued in 2013 by former Township manager, Steven J. Bonanni, Sr. Galloway and its mayor were represented in the litigation by an attorney assigned by the Township's insurance carrier. There were efforts to resolve the litigation in mediation, and in October 2014 Bonanni's attorney advised Galloway's defense counsel that Bonanni would settle if Galloway approved the settlement by October 28, 2014, and payment of the settlement proceeds was made within ten days thereafter. On October 28, 2014, Galloway requested that its town solicitor prepare a resolution approving the settlement of the Bonanni litigation.

On November 4, 2014, prior to Galloway's adoption of a resolution approving the settlement, Bonanni signed a document entitled "RELEASE AND SETTLEMENT AGREEMENT" (Release). In the document, Bonanni released Galloway from all claims he may have

against it.  The Release did not require or permit execution by Galloway's mayor or anyone else on Galloway's behalf.

That same day, Galloway's township solicitor responded to an inquiry concerning the status of the Bonanni settlement.  In an email, the solicitor confirmed he had been authorized to prepare a resolution based on a recommendation to settle the Bonanni litigation, but that "no settlement agreement [had been] drafted yet, let alone approved."

On November 12, 2014, Galloway's governing body adopted a resolution in public session authorizing the settlement of the Bonanni litigation.  In pertinent part, the resolution made Galloway's agreement to settle "subject to and conditioned upon the execution and delivery of a general Settlement Agreement and Release . . . resolving the litigation in full and complete satisfaction of all issues set forth in the litigation."  The resolution further conditioned the settlement on Galloway's defense counsel's "review and approval" of the "Settlement Agreement and Release."  The resolution required execution of a settlement agreement by Galloway's mayor, and attestation of the mayor's signature by Galloway's acting township clerk, who also served as its OPRA records custodian.

Prior to adopting the resolution, Galloway issued a check for its portion of the payment due to Bonanni under the settlement,[1] and sent it to Galloway's defense counsel for delivery to Bonanni's attorney. On November 11, 2014, however, defense counsel returned the check to the township manager and requested issuance of a new check because the first check included tax-withholding deductions. In a letter to the manager, defense counsel explained that under the terms of the Bonanni settlement, Galloway's payment was not to include withholding deductions. At the same time, defense counsel provided the township clerk with the Release. Galloway issued a corrected settlement check on November 12, 2014.

In response to a tip that the Bonanni litigation had been resolved, on November 20, 2014, complainant served Galloway with an OPRA request for the "settlement agreement with Steve Bonanni." By that time, the Release had been signed and delivered to Galloway's defense counsel, the settlement check had been issued, corrected and reissued, and the attorneys had exchanged the stipulations of dismissal they agreed would be filed to terminate the litigation.

---

[1] As part of the settlement agreement, the remaining portion of the agreed upon settlement payment was made by Galloway's insurance carrier.

A-2809-15T4

Having never received a written agreement signed by the mayor as required by the resolution, on November 20, 2014, Galloway's records custodian denied plaintiff's OPRA request in writing, stating "[t]he requested settlement agreement for Steve Bonanni has not been executed yet."[2]  That same day, Galloway's township solicitor asked defense counsel if the Bonanni "settlement [has] been completely finalized, including the tax deduction issue?" Defense counsel responded that he was out of his office, but had not "received anything as of today."

On November 24, 2014, Galloway's defense counsel forwarded the reissued corrected settlement check to Bonanni's attorney. In addition, Galloway's defense counsel advised he would file the first of two separate stipulations of dismissal with the court. The stipulation, which was dated October 30, 2014, dismissed the case as to the mayor only.  Galloway's defense counsel and Bonanni's attorney had agreed the stipulation of dismissal as to Galloway would be filed later.

On December 22, 2014, complainant served a second OPRA request stating "[s]ubject to immediate release[,] please provide the

_____

[2] As noted, the resolution required that the records custodian, who also served as the acting township clerk, attest to the mayor's signature on the settlement agreement.  The records custodian was aware she had not attested to the mayor's signature on a settlement agreement and therefore reasonably understood the agreement required by the resolution had "not been signed yet."

Steve Bonanni settlement agreement." On December 29, 2014, the records custodian responded in writing, stating "Steve Bonanni's settlement agreement has not been executed yet."

On December 30, 2014, the township solicitor asked Galloway's defense counsel about the status of the Bonanni litigation and whether it could be considered "final and subject to OPRA release." Defense counsel responded the following day, advising he had just provided a copy of the "closing documents" to the township manager, he was waiting to file the stipulation of dismissal as to Galloway, and the settlement was final "as far as [he was] concerned." Defense counsel faxed copies of the release and stipulations of dismissal to the township manager and explained that although the documents had been previously signed, they were not approved by the Township until "much later."

On January 1, 2015, complainant wrote to the township solicitor advising that he was informed a check was issued to Bonanni and inquiring how the Township could issue a check if there was no executed settlement agreement.[3] The next day, the records custodian received the Release, and provided a copy to complainant. The records custodian delivered the Release to

---

[3] In fact, a settlement check was issued to Bonanni in November 2014 without there being a written settlement agreement between Galloway and Bonanni.

plaintiff within seven business days of the records custodian's receipt of complainant's December 22, 2014 OPRA request.

Three days after receiving the Release, complainant filed a GRC complaint alleging the records custodian unlawfully denied access to the Release in response to his November 20, 2014 OPRA request. Complainant asserted the November 4, 2014 release predated the OPRA request, the records custodian knowingly and willfully violated OPRA by failing to provide it, and the records custodian was subject to a civil penalty under N.J.S.A. 47:1A-11. Complainant later amended the complaint, adding Galloway's defense counsel and township solicitor and alleging they participated in the unlawful denial of access to the Release.

On January 15, 2015, defense counsel filed the October 30, 2014 stipulation of dismissal as to Galloway with the court. On January 26, 2015, defense counsel advised Galloway that the Bonanni litigation had ended.

On January 29, 2015, complainant filed a second denial of access complaint with the GRC. The complaint reasserted the claims in the plaintiff's initial complaint. The complaint also alleged Galloway's records custodian, defense counsel and township solicitor knowingly and willfully violated OPRA and should pay a civil penalty under N.J.S.A. 47:1A-11 for wrongfully denying immediate access to the Release in response to the December 22,

2014 request. Complainant further alleged the solicitor should be disqualified from representing Galloway in the GRC proceeding.

The GRC consolidated plaintiff's complaints and received statements of information from the parties, and its executive director issued written findings and recommendations. Citing the GRC decisions in Paff v. City of Union, GRC Complaint No. 2012-262 (Aug. 27, 2013) and Kohn v. Twp. of Livingston, GRC Complaint No. 2012-328 (Aug. 27, 2013), the executive director reasoned that Galloway did not have an obligation to produce the record complainant requested on November 20, 2014, until the Bonanni settlement was finalized. The executive director found that on November 20, 2014, the settlement of the Bonanni litigation was not final because Galloway "had not finalized and executed a settlement agreement" with Bonanni as required under the resolution.

The executive director explained that although the records custodian later learned the Release was the only document memorializing the settlement, she had not seen the Release prior to the November 20, 2014 OPRA request. In addition, the executive director found the records custodian reasonably believed no settlement had been reached because she had not been asked to attest to the mayor's signature on a settlement agreement as required by the resolution. The executive director also determined

that the settlement agreement was not final on November 20, 2014, because the first stipulation of dismissal was not filed until weeks later on December 8, 2014. The executive director concluded the records custodian did not unlawfully deny access to the Release on November 20, 2014, because "the evidence supports that the Township had not yet executed and finalized settlement at that time."

The executive director also addressed complainant's denial of access complaint based on the production of the Release in response to his December 22, 2014 OPRA request. He determined that because only Bonanni signed the release, it was unclear whether the document "actually served as the official settlement agreement at the time of disclosure." He also noted that there were conditions precedent to the final settlement of the matter, including the filing of the stipulation of dismissal as to Galloway, that were not satisfied when the December 22, 2014 request was made.

The executive director found it unnecessary to determine if the Release was exempt from disclosure under OPRA because, despite the records custodian's denial of access on December 22, 2014, she provided the release within seven business days of the request and therefore did not violate OPRA. The executive director also

recommended rejection of complainant's claims against Galloway's defense counsel and township solicitor.

The GRC adopted the executive director's findings and recommendations. In its final agency decision, the GRC determined the records custodian did not deny access to the release on November 20, 2014, because the evidence showed Galloway had not executed and finalized the settlement at that time. The GRC further concluded that there was no denial of access to the Release in response to complainant's December 22, 2014 request because the document was provided within seven business days. This appeal followed.

II.

Our standard of review of a decision by the GRC "is governed by the same standards as review of a decision by any other state agency." Fisher v. Div. of Law, 400 N.J. Super. 61, 70 (App. Div. 2008). "A reviewing court will not overturn an agency's decision unless it violates express or implied legislative policies, is based on factual findings that are not supported by substantial credible evidence, or is arbitrary, capricious or unreasonable." Ibid. "[U]nder our deferential standard of review, we give weight to the GRC's interpretation of OPRA." McGee v. Twp. of E. Amwell, 416 N.J. Super. 602, 616 (App. Div. 2010). "We do not, however, simply rubber stamp the agency's decision." Paff v. N.J. Dep't

of Labor, 392 N.J. Super. 334, 340 (App. Div. 2007) (citation omitted); E.g., Paff v. N.J. Dep't of Labor, 379 N.J. Super. 346, 358 (App. Div. 2005). "Our standard of review is plenary with respect to" an interpretation of OPRA. Asbury Park Press v. Cty. of Monmouth, 406 N.J. Super. 1, 6 (App. Div. 2009), aff'd, 201 N.J. 5 (2010).

We begin by noting that the parties do not dispute that settlement agreements are government records and subject to disclosure under OPRA. See Asbury Park Press v. Cty. of Monmouth, 201 N.J. 5, 6 (2009) (finding settlement agreement resolving lawsuit between an employee and a county is a government record subject to disclosure under OPRA). But here, the Bonanni settlement agreement was an oral agreement between Galloway's defense counsel and Bonanni's attorney. They agreed to the settlement terms: Bonanni agreed to execute a release of all claims and dismissal of the lawsuit in exchange for a monetary payment. There was no written settlement agreement between Galloway and Bonanni setting forth those terms, even though the resolution required a written agreement signed by the mayor, with his signature attested to by the acting township clerk.

Although the Release was not a contract between Galloway and Bonanni and did not comport with the requirements of the resolution, Galloway and the GRC considered the Release a

government record encompassed within complainant's OPRA requests for production of the Bonanni "settlement agreement." That is why on January 2, 2015, the records custodian, after being advised for the first time that the settlement was final, provided complainant with the Release in response to his request for the Bonanni "settlement agreement."

Relying on its decisions in Paff, supra, GRC Complaint No. 2012-262, and Kohn, supra, GRC Complaint No. 2012-328, the GRC determined that the failure to provide the Release in response to the November 20, 2014 request did not violate OPRA because the settlement of the Bonanni litigation was not final at that time. In the executive director's findings and recommendations, which the GRC adopted, it states "the [GRC's] position on settlement agreements is that same are not finalized until all parties have executed the agreement." We need not address the validity of the GRC's application of its decisions in Paff or Kohn[4] because having

---

[4] In Kohn, the GRC determined that a memorandum was not a government record subject to disclosure under N.J.S.A. 47:1A-1.1 because it contained "inter-agency or intra-agency advisory, consultative or deliberative material" concerning a settlement that had not been finalized. Kohn, supra, GRC Complaint No. 2012-328. In Paff, the GRC found there was no denial of access to a requested "settlement agreement" where the agreement did not exist at the time at the time of the OPRA request. Paff, supra, GRC Complaint No. 2012-262. Here, the GRC did not make any factual findings supporting a determination that the Release contained "advisory, consultative or deliberative material." Instead, the GRC assumed the Release

reviewed the record, we are convinced the GRC's factual finding that the settlement agreement was not final on November 20, 2014, is not supported by substantial credible evidence.

"An agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into, and which a court . . . shall honor and enforce as it does other contracts." Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div.), certif. denied, 94 N.J. 600 (1983); accord Cumberland Farms Inc. v. New Jersey Dept. of Envtl. Prot., 447 N.J. Super. 423, 438 (App. Div. 2016), certif. denied, 229 N.J. 149 (2017). Parties to a settlement agreement "may orally, by informal memorandum, or by both agree upon all the essential terms of the contract, and effectively bind themselves thereon, if that is their intention, even though they contemplate the execution later of a formal document to memorialize their undertaking." Pascarella, supra, 190 N.J. Super. at 126.

Here, all of the terms of the settlement were agreed to between the attorneys for the respective parties prior to November

---

constituted such material based on its determination that a settlement agreement, or in this case a release, constitutes "advisory, consultative or deliberative material" until the settlement agreement is finalized. Because we conclude there is insufficient evidence supporting the GRC's determination that the settlement agreement was not final on November 20, 2014, it is unnecessary to address the validity of the GRC's assumption.

20, 2014. In accordance with the agreement, prior to November 20, 2014, the attorneys executed and exchanged the stipulations of dismissal, Bonanni signed and delivered the Release, and Galloway issued an initial and then corrected settlement check for its portion of the settlement amount due to Bonanni. There was no evidence that at any time after November 20, 2014, the attorneys negotiated or agreed to any additional settlement terms. To the contrary, the evidence established that Galloway and Bonanni entered into a binding and final agreement to settle the lawsuit prior to November 20, 2014. See, e.g., Haqrish v. Olson, 254 N.J. Super. 133, 137 (App. Div. 1992) (finding acceptance of payment in exchange for an agreement not to pursue an appeal constituted a binding settlement agreement).

We are mindful that the stipulations of dismissal were not filed and the settlement checks were not delivered until after November 20, 2014, but the settlement agreement was final and binding when plaintiff served its first OPRA request. The filing of the stipulations and delivery of the checks were simply the fulfillment of a condition of a final settlement agreement that the attorneys, on behalf of their respective clients, reached in

late October or very early November 2014.[5] See, e.g., ibid. ("Absent unusual circumstances, the courts should enforce executory agreements to settle litigation.").

We are therefore convinced the GRC erred in concluding that Galloway was not obligated to provide the Release on November 20, 2014 because the settlement agreement was not final. The record lacks substantial credible evidence supporting the factual finding upon which the GRC's conclusion is based. The parties do not dispute that the Release is a government record, N.J.S.A. 47:1A-1.1, and it was provided in fulfillment of one of the conditions of the settlement agreement. Moreover, there is no evidence showing the Release was otherwise exempt from disclosure under OPRA when complainant first requested it on November 20, 2014. See N.J.S.A. 47:1A-1.1 (defining "government record" under OPRA and detailing exempt records). We therefore reverse the GRC's determination that Galloway did not unlawfully deny access to the Release in response to complainant's November 20, 2014 OPRA request.

---

[5] We are convinced the final settlement agreement was reached in late October and early November 2014, because the stipulations are dated October 30, 2014, the Release is dated October 30, 2014, and was signed by Bonanni on November 4, 2014, and Galloway issued the initial check prior to November 11, 2014.

We next consider complainant's assertion that Galloway violated OPRA by denying lawful access to the Release in response to the December 22, 2014 request. It is undisputed that the records custodian provided the Release within seven business days of the request. See N.J.S.A. 47:1A-5(i) (requiring response to request for government records "no later than seven business days" of a request "[u]nless a shorter time period is otherwise provided by statute, regulation, or executive order"). Nevertheless, complainant asserts Galloway unlawfully denied access to the Release because it is a "contract" to which he was entitled to "[i]mmediate access" under N.J.S.A. 47:1A-5(e). We disagree.

"[C]ontracts . . . are ordinarily to be provided immediately" in response to an OPRA request, Mason v. City of Hoboken, 196 N.J. 51, 65 (2008) (citing N.J.S.A. 47:1A-5(e)). Because the statute does not define the term "contract," we give the term its "generally accepted meaning, according to the approved usage of the language." N.J.S.A. 1:1-1. Contract is defined as a "legally enforceable agreement between two or more parties" or a "writing or document containing such an agreement." Webster's II New College Dictionary, 245 (1999).

Here, as noted, the settlement agreement between Galloway and Bonanni was made orally between counsel, and was never incorporated into a formal written agreement. The records custodian reasonably

16                                                              A-2809-15T4

believed no settlement agreement had been made because the resolution required the mayor's signature on any settlement agreement and the records custodian knew that had not yet occurred. In any event, although the Release did not include all of the settlement terms and did not conform to the requirements of the resolution, we are satisfied that on December 22, 2014, it was an enforceable contract that was subject to the requirement of immediate production under N.J.S.A. 47:1A-5(e).

The Release created contractual rights between the parties. Under the Release, Bonanni agreed to dismiss his lawsuit and release all claims against Galloway in exchange for the monies he received. And although Galloway did not execute the document, the Release granted Galloway an enforceable contractual right precluding Bonanni's assertion of any future claims. In other words, the Release was a contract between the parties even though it was signed only by Bonanni. See Domanske v. Rapid-American Corp., 330 N.J. Super. 241, 246 (App. Div. 2000) (finding "a release is merely a form of contract"). The Release was a contract that satisfied one of the conditions of the settlement agreement and was a government record encompassed by complainant's requests for the "settlement agreement."

The GRC rejected complainant's claim he was unlawfully denied access in response to his December 22, 2014 request because it

determined the Release was provided within seven days of the request.[6] This finding was based on its determination that the settlement agreement was not final when the request was made. As noted, the record lacks substantial credible evidence supporting that conclusion. To the contrary, the settlement was final and the Release constituted a contract to which Galloway should have provided immediate access N.J.S.A. 45:1A-5(e). We reverse the GRC's determination to the contrary.

Complainant also claims that the GRC erred by failing to determine it was the prevailing party and was entitled to attorney's fees. The GRC did not reach those issues and others, including complainant's claim for the imposition of civil penalties, because it determined there were no OPRA violations. We will not address those claims in the first instance. The GRC shall address the claims on remand.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[6] The executive director recommended that because the Release was properly produced within the seven-day period, the GRC should decline to determine if the Release was exempt from disclosure because the settlement agreement was not yet final in December 22, 2014. Again, the record lacks sufficient credible evidence supporting any determination that the settlement agreement was not final on December 22, 2014.

A-2809-15T4