**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2940-21

SUZANNE FEINBERG,

     Plaintiff-Respondent/
Cross-Appellant,

v.

DAMON FEINBERG,

     Defendant-Appellant/
Cross-Respondent.

_____

Argued October 8, 2024 – Decided December 27, 2024

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Monmouth County, Docket No. FM-13-0174-20.

Lauren H. Kane argued the cause for appellant/cross-respondent.

Carrie Ayn Smith argued the cause for respondent/cross-appellant (Lumi Law Firm, LLC, attorneys; Carrie Ayn Smith, of counsel and on the briefs.)

PER CURIAM

Following a seven-day Harrington[1] hearing, the Family Part judge entered an order that the parties settled their divorce action. Based on her credibility findings, the judge rejected defendant's claim that he did not agree to settle the matter. The judge determined defendant accepted plaintiff's settlement offer of $240,000 in consideration for granting the divorce and a mutual release. The judge denied plaintiff's request for attorney's fees and costs arising from her successful enforcement of the settlement agreement.

Defendant raises several contentions on appeal. First, the judge erred because he did not agree to plaintiff's settlement offer and, moreover, the agreement was not in writing as required by Willingboro Mall, Ltd. v. 240/242 Franklin Ave., L.L.C., 215 N.J. 242, 256 (2013). Second, the settlement agreement was unenforceable because it was not fair and equitable given that discovery was incomplete. Third, the judge erred by not awarding him retroactive alimony pendente lite. Finally, fourth, a new Harrington hearing must be held because the hearing transcripts are incomplete due to numerous "indiscernible notations."

---

[1]  Harrington v. Harrington, 281 N.J. Super. 39, 46-47 (App. Div. 1995).

A-2940-21

Plaintiff cross-appeals the denial of her attorney's fees and costs request. She contends the judge erred in: (1) not analyzing all relevant statutory factors in its decision; (2) placing too much emphasis on the parties' abilities to pay their own fees; and (3) not considering defendant's "bad faith" conduct and the need "to enforce existing orders or compel discovery."

Having reviewed the record, the parties' arguments, and applicable law, we are unpersuaded by the arguments in their respective appeals and affirm the judge's orders. Regarding defendant's appeal, we conclude: (1) there is no basis to upset the judge's determination that the parties reached a binding settlement agreement; (2) the parties' agreement was the product of a settlement conference, not a mediation session and, thus, they did not have to execute a written agreement for the agreement to be binding; (3) despite the number of indiscernible notations in the Harrington hearing transcripts, our appellate review is not hindered; and (4) the settlement agreement is fair and equitable. Regarding plaintiff's cross-appeal, we conclude the judge considered all relevant statutory factors and did not abuse her discretion in denying plaintiff's attorney's fees and costs request.

I

We forgo discussing the history of the parties' marital relationship and the issues raised in their divorce action. Instead, we focus on the primary matter before us: the dispute surrounding the resolution of their marital discord with Judge Issenman.

Approximately two weeks before trial, the parties participated in a virtual "final Four-Way Intensive Settlement Conference" pursuant to the judge's order. Judge Issenman, a retired judge with about seventeen years' experience in family court, conducted three settlement conferences without compensation from the parties. At the end of the third conference, defendant's counsel told Judge Issenman that defendant accepted plaintiff's last and final offer of $240,000 in consideration for agreeing to the divorce and a mutual release. That evening, without copying defendant, defendant's counsel emailed plaintiff's counsel and Judge Issenman confirming that defendant accepted plaintiff's offer.

The next day, defendant's counsel emailed, with a copy to defendant and plaintiff's counsel, a letter to the judge reporting the parties resolved the matter. However, four days later, defendant emailed his counsel stating he "will not sign the marital settlement agreement." He added:

> Frankly, it was premature to write a letter to [the judge]
> stating that the "matter had been resolved"[] before I

4

even had the opportunity to review the proposed settlement agreement and go over it with you in detail.

Please draft and send a follow-up letter to [the judge] and the adversary letting them know that I will not accept their proposed settlement, and that therefore this matter has not been resolved.

Despite defendant's email, his counsel sent the settlement agreement to defendant to sign. In response, defendant twice emailed his counsel asserting he wanted new counsel. Several days later, defendant's new and current counsel sent a letter to the judge claiming defendant suffered from "a serious breakdown in communications [regarding] the attorney/client relationship with" prior counsel, and that, within twenty-four hours of accepting plaintiff's offer, defendant "had second thoughts" and refused to sign the written settlement agreement. The letter also asked the judge to allow new counsel to substitute as defendant's counsel. The record does not include a court order permitting substitution, but new counsel has represented defendant since that letter.

Because defendant contended the divorce action was not settled, the trial judge ordered a Harrington hearing to decide whether the parties reached an enforceable settlement agreement. Over the course of seven hearing days spanning ten months, conducted virtually due to the pandemic, the judge heard testimony from the parties, defendant's first counsel, and Judge Issenman. After

5

reserving decision, the judge issued an order finding the divorce settled based on the parties' agreement. In a bench decision, the judge explained why she rejected defendant's testimony that he did not agree to settle the matter for $240,000 and, instead, believed the other witnesses' testimony that the parties reached a binding oral settlement agreement.

All witnesses but defendant testified that the parties reached a settlement agreement. In her credibility assessments, the judge found defendant's first counsel truthful because he "had no interest in the outcome of the case" and gave "logical responses when examined." The judge found plaintiff credible because her "answers were direct and forthright"; she "had good recall of facts"; she "did not embellish events"; her answers were consistent; and she "provided articulate explanations for her discovery responses" about her finances. The judge also found Judge Issenman credible because he "had no interest in the outcome of this case"; was "a seasoned Family Court judge who has practiced as an arbitrator and mediator since he left the bench in 2012"; and volunteered three days of his time to help the judge resolve the case.

In contrast, the judge found defendant's testimony "haphazard," "rambling," "digressive," and inconsistent. The judge stated defendant "changed his testimony, particularly regarding acceptance of the final offer, as well as the

circumstances regarding his interaction with [defendant's initial counsel] and Judge Issenman." At the first hearing date, defendant testified he accepted plaintiff's settlement, admitting that, although agreeing to the divorce made him "uncomfortable," he accepted the offer. Five months later, defendant changed his tune, testifying he believed there was no settlement as he "never agreed at all" to it. The judge rejected defendant's testimony accusing his first counsel of sexual harassment — allegedly asking him, "Do you want to have sex with me?" — reasoning it "appear[ed] to have been created from whole cloth during the course of these proceedings."

In sum, the judge determined defendant's initial agreement to accept plaintiff's offer resulted in a binding agreement, despite his second thoughts. The judge held the settlement agreement was "more than fair and equitable" considering the parties never had a marital home, living in separate cities (plaintiff in New York and Atlanta, defendant in Reading, Pennsylvania), and their standard of living.

## II.

In his appeal, defendant argues the judge erred in finding he agreed to settle the divorce action. He specifically asserts "he never said 'I accept' or 'yes'"

to plaintiff's settlement offer and, at most, responded "I guess" when his first counsel and Judge Issenman pressured him to accept the settlement.

Our review of a Family Part judge's orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). Given the Part's "special expertise in the field of domestic relations," substantial deference is owed to its factual findings so long as they are supported by "adequate, substantial, [and] credible evidence." Id. at 412. A family judge's legal conclusions, however, are reviewed de novo. Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995).

Settlement of matrimonial disputes is encouraged and highly valued in our court system. Quinn v. Quinn, 225 N.J. 34, 44 (2016). "The basic contractual nature of matrimonial agreements has long been recognized." Pacifico v. Pacifico, 190 N.J. 258, 265 (2007) (citing Harrington, 281 N.J. Super. at 46). A settlement agreement becomes an enforceable contract when the parties agree on and manifest their intent to be bound by the essential terms of the agreement. See Hagrish v. Olson, 254 N.J. Super. 133, 138 (App. Div. 1992). A contract will be held unenforceable if it was "procured by fraud or falsehood," or if such enforcement would produce "great hardship or manifest injustice." Schiff v. Schiff, 116 N.J. Super. 546, 561 (App. Div. 1971). "Our review of a [judge's order] to enforce settlement is de novo and considers whether the 'available

competent evidence, considered in a light most favorable to the non-moving party, is insufficient to permit the judge . . . to resolve the disputed factual issues in favor of the non-moving party.'" Gold Tree Spa, Inc. v. PD Nail Corp., 475 N.J. Super. 240, 245 (App. Div. 2023) (alteration in original) (quoting Amatuzzo v. Kozmiuk, 305 N.J. Super. 469, 474-75 (App. Div. 1997)).

Our de novo review of the record supports the judge's credibility findings that defendant accepted plaintiff's settlement offer. During the settlement conference, defendant indicated plaintiff's $240,000 offer was "acceptable, or perhaps close to acceptable." Following the conference, defendant spoke with Judge Issenman and his first counsel, and then with first counsel alone. In his private discussion with counsel, defendant "said that he understood" plaintiff's offer and "said that he accepted it." At the ensuing Harrington hearing, defendant initially testified that he accepted the offer. The judge found this testimony credible, but found not credible his testimony given five months later that he believed there was no settlement. Defendant's "second thoughts are entitled to absolutely no weight as against our policy in favor of settlement." Dep't of Pub. Advoc., Div. of Rate Counsel v. N.J. Bd. of Pub. Utils., 206 N.J. Super. 523, 530 (App. Div. 1985). By accepting plaintiff's offer to settle their divorce, defendant was legally bound by his agreement.

A-2940-21

III.

Defendant contends the parties' settlement agreement is unenforceable because it was the result of a mediation session and was not in writing as required by Willingboro Mall. Defendant cites the numerous instances in the record where the judge, plaintiff's counsel, and Judge Issenman used the term "mediator" or "mediation." We disagree.

Our high Court's ruling in Willingboro Mall is clear: "[A] settlement that is reached at mediation but not reduced to a signed written agreement will not be enforceable." 215 N.J. at 263; see also Gold Tree Spa, 475 N.J. Super. at 245 (holding where "[t]he parties did not sign the draft settlement agreement . . . it is unenforceable under Willingboro [Mall]'s broad, bright-line rule"). The settlement here was not reached in the context of a mediation session.

Defendant correctly points out there are numerous references in the record where the judge, plaintiff's counsel, and Judge Issenman use the term "mediator" or "mediation." For example, defendant emphasizes the judge's question "Is it your client's position that the mediation was going to continue?" as evidence the judge believed the parties were engaged in mediation. Yet, defendant omits that, right after that comment, the judge reiterated that it "ordered the parties to have [an] intensive settlement conference" instead of a mediation. While numerous

10

references to "meditation" or "mediator" in the record have some bearing on Judge Issenman's role, a closer look at the proceeding when the parties settled the case confirms this was in fact a settlement conference. The record supports the judge's finding that the settlement conference "was not a mediation" because "[she] did not send the parties back to [a] mediator. . . . [Judge Issenman] [is] a volunteer, unpaid, . . . to help the [c]ourt, resolve difficult, highly litigious, overly old cases. And the [court's] intensive efforts on the eve of trial."

The parties were directed to participate in a Four-Way Intensive Settlement Conference. They were not ordered to mediation. Judge Issenman was not compensated by the parties to mediate, as is typical for a mediation session. Judge Issenman conducted settlement negotiations as a trial judge would in trying to resolve a case shortly before trial. Significantly, prior to Judge Issenman's involvement, the parties had an unsuccessful court-ordered economic mediation.

## IV.

Defendant argues that a new Harrington hearing must be held because the hearing transcripts are incomplete due to "hundreds of 'indiscernible' notations." In support, he cites ninety-six times in one hearing transcript where "indiscernible" appears. During that same hearing date, defendant points out

that "the audio recording inexplicably stopped during [first counsel's] testimony" and, according to first counsel, perhaps "forty-five minutes" of his "testimony is entirely missing from the transcript." Thus, defendant demands a "remand . . . to the trial court for a new hearing in order to create a complete record." We disagree.

Defendant first raised concerns about the numerous amounts of indiscernible notations in the transcripts before the trial judge.[2] In response, the judge suggested that defendant "order the [hearing] [audio]tape[s]." The judge also offered to listen to the audiotapes for any piece of crucial testimony missing from the transcripts. The judge said, "if you or I listen to the tape we probably know what's being said . . . because we lived it." Importantly, defendant did not move to reopen and reconstruct the record, nor is it clear whether a recording was obtained as the judge suggested.

To ensure due process and fairness when a proceeding's verbatim record is inadequate, the parties and the judge may "reconstruct the record in a manner sufficient to provide a reasonable assurance of accuracy and completeness."

---

[2] According to plaintiff, the "majority of the indiscernible notations . . . are the direct result of" defendant and his counsel speaking "over each other, the trial judge, opposing counsel and other witnesses."

State v. Bishop, 350 N.J. Super. 335, 347 (App. Div. 2002). The party who contends the record is incomplete has the burden to assist the judge in making the record complete. Id. at 348. However, because there is no indication defendant did so, he cannot now complain on appeal. See, e.g., State v. A.R., 213 N.J. 542, 561 (2013) ("Under . . . [the invited error rule], trial errors that 'were induced, encouraged or acquiesced in or consented to by defense counsel ordinarily are not a basis for reversal on appeal'" (quoting State v. Corsaro, 107 N.J. 339, 345 (1987))).

In any event, defendant's concerns about the hearing transcripts do not affect our review. The indiscernible notations do not prevent us from evaluating the witnesses' testimony to decide the issues on appeal. Defendant does not point to any key testimony that was not clearly reflected in the transcripts. Likewise, he fails to show that forty-five minutes of missing testimony impacts his appeal. In short, defendant's contentions are merely bare allegations with no showing of how appellate review is impeded.

V.

Defendant's arguments concerning the fairness of the settlement and incomplete discovery lack sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E). We only add that the judge's determination

13

that the settlement is fair and equitable because "[i]t's very generous" is supported by the law and substantial, credible evidence in the record. Also, there is no indication the judge abused her discretion in determining discovery issues. See Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011).

## VI.

Because we conclude the parties reached a binding and fair settlement agreement, we need not address defendant's argument that the judge failed to award him retroactive alimony pendente lite. As the judge noted, her order was "enforcing a settlement, so" she did not "have to" consider defendant's application for alimony as "the settlement agreement is a lump sum to buy out everything, alimony, support, all claims." Moreover, for the sake of completeness, the judge found defendant was not entitled to alimony because "the parties did not live together during the marriage in any traditional sense," and there was no evidence that plaintiff supported defendant or promised to do so during the marriage. The judge also stressed that defendant lived with and was supported by his parents. Defendant does not show the judge's order is flawed.

A-2940-21

Finally, we turn to plaintiff's cross-appeal of the order denying her attorney's fees and costs request of $68,235.48. Plaintiff argues the judge abused her discretion because her decision: (1) failed to analyze every relevant statutory factor set forth in N.J.S.A. 2A:34-23; (2) "failed to give appropriate weight to [d]efendant's bad faith actions"; and (3) improperly rested on plaintiff's "ability to afford her own counsel fees more than [d]efendant" Plaintiff claims the record "overwhelmingly support[s]" her request. We are unpersuaded.

N.J.S.A. 2A:34-23 provides that "the [trial judge] shall determine the appropriate [counsel fee] award . . . if any, . . . [after] consider[ing] the factors set forth in [Rule 5:3-5], . . . the financial circumstances of the parties, and the good or bad faith of either party." The judge must consider the following factors when deciding whether to award counsel fees:

> (1) the financial circumstances of the parties; (2) the ability of the parties to pay their own fees or to contribute to the fees of the other party; (3) the reasonableness and good faith of the positions advanced by the parties both during and prior to trial; (4) the extent of the fees incurred by both parties; (5) any fees previously awarded; (6) the amount of fees previously paid to counsel by each party; (7) the results obtained; (8) the degree to which fees were incurred to enforce existing orders or to compel discovery; and (9) any other factor bearing on the fairness of an award.

15

[R. 5:3-5(c)(1)-(9).]

Contrary to plaintiff's contention, the record reveals that the judge's discretionary order denying plaintiff attorney's fees and costs was based upon consideration of all relevant factors and was not a clear error in judgment. See Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005) (citing Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). Notably, the judge found defendant's "tactics during the trial" represented "questionable faith," especially because "his testimony . . . demonstrated [he used] the litigation as a means to maintain a connection to [plaintiff] in light of the foreseeable end of this case." The judge also found defendant engaged "in a frivolous pursuit of vacating a fair and equitable settlement." Furthermore, the judge found

> [plaintiff] has the ability to afford her counsel fees far more than defendant, and the only reason this [c]ourt will not award her fees to be paid by [defendant] is because of the substantial fees he must bear to pay for his own pursuit of the rejection of this settlement. Although the [c]ourt will not go as far today to say that [defendant] proceeded in bad faith, his position was without merit and little more than a post-hoc endeavor to renegotiate the terms of an agreement following further reflection he changed his mind within [twenty-four] hours.
>
> On balance[,] while the [c]ourt finds [plaintiff's] counsel application appropriate, the [c]ourt will not award her counsel fees to be paid by [defendant].

16

Considering the noted principles guiding our review, we see no reason to upset the order denying plaintiff's request for attorney's fees and costs.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2940-21