**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0963-21

THOMAS A. FUREY,

    Plaintiff-Appellant,

v.

JOHN J. RAGAN,

    Defendant-Respondent,

and

THE ENTECH GROUP, INC.,

    Defendant.

_____

Submitted October 17, 2023 – Decided December 14, 2023

Before Judges Sumners and Smith.

On appeal from the Superior Court of New Jersey, Chancery Division, Morris County, Docket No. C-000122-19.

Brach Eichler, LLC, attorneys for appellant (Anthony M. Rainone, of counsel and on the briefs; Michael A. Spizzuco, Jr., on the briefs).

Carmagnola & Ritardi, LLC, attorneys for respondent (Steven F. Ritardi, of counsel and on the brief; Stephanie Torres, on the brief).

PER CURIAM

Plaintiff appeals from a series of Chancery Division orders enforcing a settlement agreement to resolve shareholder litigation over dissolution of a company owned by the parties. The orders included provisions for plaintiff to pay defendant: an agreed upon amount for the stock purchase; accounts receivable due defendant for services rendered while at the company; and other cash. The court also ordered payment of defendant's counsel fees. Among other things, plaintiff argues the trial court erred in making certain fact findings, including its calculation of the accounts receivable due defendant. For the reasons that follow, we affirm.

I.

Plaintiff and defendant were founding shareholders in an engineering firm, Entech. They each held a fifty-percent ownership interest. Among other things, Entech provided services for real estate development projects, environmental investigation and remediation, and construction management. The parties reached a business impasse and in 2019, plaintiff filed a verified complaint alleging corporate deadlock under the New Jersey Business

A-0963-21

Corporation Act (BCA), N.J.S.A. 14A:1-1 to -11. Plaintiff also made an emergent application to the Chancery Division seeking temporary restraints to limit defendant's ability to participate in Entech's business matters and an emergent application to dissolve the business. On January 8, 2020, the trial court denied plaintiff's emergency application preserving the status quo.

After protracted negotiations, the parties reached a tentative agreement in March 2020. The relevant terms stated defendant would: sell his Entech stock to plaintiff via stock purchase agreement (SPA); be paid $300,000 as well as any accounts receivable (AR) attributable to his client base; retain $20,576 in cash receipts already in his possession; and resign from all Entech board, officer, and employment positions, leaving plaintiff as sole owner. The parties agreed to execute the SPA, and plaintiff agreed to a consent judgment to be held in escrow as security for the installment payments.

Plaintiff was to make the proposed $300,000 payment in installments, with $150,000 due to defendant upon execution of the SPA, and the remaining $150,000 paid in quarterly installments of $12,500.

The anticipated settlement never occurred. The parties sparred over the SPA terms, including terms governing the calculation and timing of the AR payment due defendant. Unable to reach an agreed upon amount, both parties

moved to enforce the settlement, arguing for their respective interpretations of the AR payment.

Before argument on the motions, plaintiff informed defendant he intended to unilaterally cease Entech's operations and transfer its assets, including employees and clients, to a new business entity effective October 4, 2020.

Defendant then filed an order to show cause for temporary restraints to stop plaintiff's transfer of Entech assets to the new company. The court denied the motion on October 14, after the "effective date" of plaintiff's asset transfer. As part of its reasons for denial, the court found Entech had ceased doing business, and money damages were potentially available to defendant. Finding plaintiff had violated the court's January 8, 2020, order, it ordered plaintiff to deposit $162,500 into trust pending the outcome of the litigation.

Days later, on October 19, 2020, the court heard argument on the cross-motions to enforce settlement. Plaintiff contended that until the execution of an SPA provided a formal "closing date" for the settlement, any amount collected from defendant's former clients was not part of defendant's AR.

On October 26, 2020, the court issued an order and made findings in a detailed twelve-page written statement of reasons. It noted sufficient credible evidence existed in the record to find "a meeting of the minds as to paragraph

4

2(b)—in the March 20 [draft] agreement—insofar as [defendant] is entitled to all net AR from the [defendant's] [c]lient [b]ase whether billed or unbilled, for work performed on behalf of the [defendant's] [c]lient [b]ase and received in 2020 or thereafter."

The court expressly rejected plaintiff's argument regarding calculation of defendant's AR, stating:

> In plaintiff's view, [paragraph 2(b) of the March 20 agreement]—which remained unaltered prior to the March 20 [a]greement—means "only the [AR] that were paid from Defendant's clients to Entech ***AFTER the Closing Date*** would be paid to [d]efendant."  In other words, [defendant] would be entitled only to the net AR paid to Entech <u>after</u> execution, and not any net AR received by Entech before closing.  However, plaintiff maintains the closing date has not yet occurred.  The court is concerned these circumstances—as laid out by plaintiff—present a material financial hardship to [defendant]: for every passing day on which Entech receives AR from [defendant's] [c]lient [b]ase, [defendant] will be unable to collect, pursuant [to] paragraph 2(b) of the March 20 [a]greement.  Therefore, plaintiff's position results in [defendant] being denied AR for any day from March 20, 2020 until the closing occurs.  In fact, defendant argues plaintiff "has [therefore] adopted a strategy of delay, made particularly unconscionable given his attorney's express representations that any delay in furnishing the settlement and closing were of no urgency and posed no harm to [defendant]."
>
> [Plaintiff's counsel] conceded at oral argument any AR paid to Entech prior to the closing date, as

established by the court, would not be included in required payments to [defendant] pursuant to paragraph 2(b). This position is not supported by the extrinsic evidence surrounding paragraph 2(b) and cannot be countenanced, particularly because [plaintiff's counsel]'s email response to [defendant's counsel]—who offered to draft the settlement documents on March 23, 2020—advised [defendant's] attorney to "relax. There's a pandemic out there and there is no harm to [defendant's] interests." Plaintiff's proposed interpretation of the March 20 [a]greement—in which [defendant] does not receive any AR prior to an unknown closing date—harmed [defendant's] interest in the amount of AR payable to him.

[(Emphasis in original).]

Having made these and other findings, the court ordered the parties to execute: the SPA; general releases; a written settlement agreement; and a stipulation of dismissal with prejudice. The court also ordered plaintiff to pay defendant the agreed upon $300,000 for purchase of defendant's Entech stock. The terms of payment ordered by the court were: $150,000 to defendant within ten days, and the balance to be paid over thirty-six months commencing December 31, 2020. The $150,000 balance was to be secured by a consent judgment held against Entech (and any successor entities), as well as plaintiff and his wife, Ann Furey, jointly and severally, in the amount of $200,000. Defendant was to again retain the cash receipts. On the disputed accounts receivable question, the court found defendant was entitled to "payment from

6

plaintiff of the sum of all [AR] by Entech from [defendant's] [c]lient [b]ase as billed, invoiced, collected or worked on, effective January 1, 2020, less the sum of all accounts payable in connection with work for the [defendant's] [c]lient [b]ase." Finally, the trial court ordered plaintiff to pay any Entech related tax liability defendant might incur for the 2020 tax year.

Plaintiff failed to comply, and defendant moved to enforce the October 26 order. The trial court ordered mediation to "resolve the disputed calculation regarding offsets to the net [AR] payable to defendant . . . ." Mediation was unsuccessful, and defendant renewed his motion to enforce settlement. Plaintiff sought reconsideration of the October 26 order, and cross-moved to enforce settlement. After argument, the trial court granted defendant's motion and denied plaintiff's cross-motion and motion for reconsideration.

In its statement of reasons, the court rejected plaintiff's arguments concerning calculation of AR, finding plaintiff's arguments were "simply repetitive attempts to renegotiate a settlement agreement the court found plaintiff already agreed to, and constitute proverbial second, third, and fourth bites of the apple to enforce plaintiff's subjective understanding of the terms of the agreement." The court also found plaintiff had engaged in a "further attempt to deny defendant his benefit of the settlement agreement," and that "[p]laintiff

7

was simply holding defendant's bargain hostage until plaintiff could conceivably recategorize defendant's [AR] as 'cash assets' and thus have some articulable reason not to pay defendant."

On May 12, 2021, the trial court essentially enforced the terms of its October 26, 2020, order, compelling plaintiff to pay the $300,000 and the AR. This time the trial court also ordered plaintiff to pay defendant's attorney fees.

Plaintiff again failed to comply with the order, and instead sought relief including reconsideration, modification, or stay of the May 12 order. The court issued a case management order directing the parties to meet and confer to hammer out an agreeable form of SPA, with agreeable AR calculations. Failing that, they were to submit their respective positions, arguments, and calculations to the court for decision. When the parties were unable to resolve the dispute, they submitted to the court, which heard argument on October 6, 2021. For the third time, the court found for defendant, issuing an order and statement of reasons dated November 29, 2021. The court ordered the company stock to be transferred and changed the payment terms slightly: $187,500 of the $300,000 paid up front, with previous installment terms in effect for the balance; and $131,537.29 for net AR due defendant. Plaintiff's request for a stay was denied and counsel fees in the amount of $11,075 were imposed on plaintiff.

A-0963-21

In the accompanying statement of reasons, the court amended its previous orders "to the limited extent they suggest the calculation of all AR due and owing to defendant is defined as anything other than all AR for [defendant's client] base ($184,985.18) less the sum of all accounts payable ($53,447.39)."

The court next found "no ambiguity or mistake in how the parties intended to calculate [defendant's] AR. The [n]et AR is all AR minus the accounts payable for [defendant's client] base." The court also found plaintiff's proposed calculation was "not supported by any language of the draft [s]ettlement [a]greement, any extrinsic evidence regarding the [s]ettlement [a]greement, or the parties' conduct in exchanging updated AR and [accounts payable] reports created by plaintiff." The court determined it was unnecessary for the parties to agree on a form of SPA, or even execute an SPA, because plaintiff dissolved Entech "unilaterally without notice to the court or defendant after the court entered an [o]rder enforcing the [s]ettlement [a]greement and requiring the execution of a stock purchase agreement . . . ." Finally, the court found plaintiff's request for a stay meritless.

We denied plaintiff's request for a stay pending appeal, and then remanded for consideration of plaintiff's request to enter a supersedeas bond. Armed with the remand order, plaintiff filed an order to show cause to stay all deadlines and

9

enforcement of the November 29, 2021, order or allow plaintiff to post a supersedeas bond. On December 30, 2021, the court denied the application in part, finding "[a]ll the material terms necessary to effectuate the transfer of Entech's value owed to defendant have been memorialized in this court's [o]rders." Plaintiff was ordered to pay: $200,000 of the $300,000 final judgment due and owing by December 31, 2021; $12,500 of the remaining $100,000 due and owing on December 31, 2021, by consent; and quarterly installments to satisfy the $87,500 balance. The court also entered a judgment against Entech, its successors, and Thomas and Ann Furey. The order of judgment stated that it would be vacated upon payment of the $300,000. Plaintiff was also ordered to pay defendant's 2020 tax liability by March 30, 2022. Finally, the court granted the bond request, and ordered plaintiff to post a supersedeas bond, pursuant to Rule 2:9-(5) and (6), in the amount of the $284,314, representing the net AR of $131,537.29, the counsel fee award of $11,075, the remaining stock sale balance due of $87,500, as well as statutory interest and costs.

On January 12, 2022, plaintiff appealed the trial court's May 12, 2021, November 29, 2021, and December 30, 2021 orders, contending the trial court erred by: finding that plaintiff's actions in September/October 2020 amounted

to a de facto dissolution of Entech; finding the SPA no longer needed to be executed as a condition precedent to payment; improperly changing its AR calculation; considering defendant's claims of financial hardship in enforcing settlement; and improperly awarding counsel fees.

## II.

The scope of appellate review of a trial court's fact-finding function is limited. See Cumberland Farms, Inc. v. New Jersey Dep't of Env't Prot., 447 N.J. Super. 423, 437 (App. Div. 2016). "[F]actual findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Ibid. (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). "We will 'not disturb the factual findings and legal conclusions of the trial judge unless' convinced that those findings and conclusions were 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Matter of Twp. of Bordentown, 471 N.J. Super. 196, 217 (App. Div. 2022), cert. denied, 252 N.J. 533 (2023) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474 (1974)). Indeed, appellate courts give great deference to the trial judge's factual findings and will not "engage in an independent assessment of the evidence as if [we] were the court of first instance . . . ." Bank of New York Mellon v. Corradetti, 466 N.J.

Super. 185, 206 (App. Div. 2020) (quoting State v. Locurto, 157 N.J. 463, 471 (1999)).

A motion seeking reconsideration is governed by Rule 4:49-2, which requires the movant to "state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred." Further, "the magnitude of the error cited must be a game-changer for reconsideration to be appropriate." Triffin v. SHS Group, LLC, 466 N.J. Super. 460, 466-67 (App. Div. 2021) (quoting Palombi v. Palombi, 414 N.J. Super. 274, 289 (App. Div. 2010)).

Reconsideration is "within the sound discretion of the [trial court], to be exercised in the interest of justice." Matter of Belleville Educ. Ass'n., 455 N.J. Super. 387, 405 (App. Div. 2018) (quoting Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996)). When reviewing the denial of a motion for reconsideration, the Appellate Division applies the same legal standard as the trial court and looks for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (citing Kornbleuth v. Westover, 241 N.J. 289, 301 (2020)).

"[A] litigant should not seek reconsideration merely because of dissatisfaction with the decision of the Court." Flecker v. Statue Cruises, LLC, 444 N.J. Super 31, 36 (App. Div. 2013) (quoting Capital Fin. Co. of Delaware Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008)). Rather, reconsideration

> should be utilized only for those cases which fall into that narrow corridor in which either (1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Ibid. (quoting Capital Fin. Co., 398 N.J. Super. at 310).]

III.

A.

We first consider plaintiff's argument that the trial court erred in finding that plaintiff had dissolved Entech. Plaintiff contends this finding caused the court to wrongly conclude that execution of the SPA was no longer required as a condition precedent to payment.

Plaintiff posits that the court erred in finding Entech was dissolved because "[n]o dissolution resolution had been adopted by the board or shareholders of Entech, nor had dissolution paperwork been filed with the State

of New Jersey." He points out that neither he nor defendant had dissolved the corporation under the BCA, N.J.S.A. 14a:12-1 to 19. We are not persuaded.

The trial court correctly determined that plaintiff's actions caused a de facto dissolution of Entech. The court does not state that Entech was formally dissolved under the BCA, rather, the court pointed out that plaintiff unilaterally terminated Entech's business operations, liquidated it assets, and caused a de facto dissolution[1] in violation of the January 8, 2020, order.

The record shows plaintiff was quite transparent in his efforts to cease Entech's business operations. He wrote defendant on September 20, 2020, to expressly inform him of that fact, notifying defendant of the exact date and time cessation would take place. He informed defendant no new business would take place in Entech's name, that defendant's health coverage would cease, that payments on defendant's company car would cease, and that defendant had to clear out his personal possessions or plaintiff would dispose of them. Plaintiff used the word "cease" repeatedly in his letter to defendant.

---

[1] See 19 C.J.S. Corporations § 905 (2023) ("A 'de facto' dissolution is one which has not been effected pursuant to the governing statute, but which has the same characteristics of cessation of corporate activity."); 16A William Meade Fletcher & Carol A. Jones, Fletcher Cyclopedia of the Law of Corporations § 7967 (2012) ("A de facto dissolution . . . has been said to take place when the acts of a corporation demonstrate a total voluntary abandonment of its franchise.").

A-0963-21

As a result of plaintiff's actions, Entech stopped doing business, was liquidated, and became a shell corporation awaiting the ministerial step of filing a certificate of dissolution under the BCA. The court had ample credible evidence in the record to support its finding that plaintiff had terminated Entech's business operations and engaged in a de facto dissolution of company.

B.

Next, plaintiff contends the court erred when it ordered that defendant did not have to execute a written SPA. He argues that the parties' March 20, 2020, settlement "specifically required execution of a[n] SPA," which "was a specific condition precedent to payment of any monies under the settlement by [him] to [d]efendant—including the down payment of $150,000.00 on the stock purchase price amount." Additionally, plaintiff suggests execution of the SPA would have "triggered numerous events under the settlement, including, but not limited to . . . the calculation of the then-outstanding [AR] amounts on [d]efendant's client accounts, for purposes of then performing a formula calculating [n]et [AR] that would be paid in the future if the clients paid Entech." We disagree.

"Equitable estoppel is a legal calibration to remedy an otherwise unfair outcome." Petersen v. Township of Raritan, 418 N.J. Super. 125, 137 (App. Div. 2011). The doctrine has been defined as:

A-0963-21

[T]he effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse.

[Lopez v. Patel, 407 N.J. Super. 79, 90 (App. Div. 2009) (citation omitted).]

Here, the trial court found plaintiff was estopped from arguing that an SPA was necessary for implementation of the parties' settlement. It stated:

Equitable estoppel is an appropriate remedy in the current situation. This court found there was a [s]ettlement [a]greement in the October 26, 2020, [o]rder because as both parties agreed, there was a "meeting of the minds" with respect to all substantive terms. Those sufficiently definite terms appear in the May 12, 2021, [o]rder. Instead, plaintiff attempted to use the court's [o]rder to meet and confer as a new opportunity to secure favorable terms in the SPA, all while withholding payments he did not dispute were owed to his fifty percent partner. The court remains unwilling to impose different or better terms than those agreed to by the parties and memorialized in the court's [o]rders. As it found in the November 29, 2021, [o]rder and statement of reasons, the SPA was rendered moot by virtue of plaintiff's unilateral dissolution of the company and failure to respond to the June 10, 2021, SPA signed and delivered by defendant. Plaintiff is equitably estopped from arguing an SPA is necessary for a company that ceased to exist fourteen months ago and has no stock.

16

The court correctly determined that equitable estoppel was the appropriate remedy. The record supports its finding that plaintiff used the SPA negotiations to buy time to conduct a de facto dissolution of Entech and attempt to reposition defendant's disputed AR to plaintiff's side of the ledger. The court's conclusion that execution of an SPA was not a condition precedent to settlement flows naturally from this finding. We discern no error.

C.

Plaintiff argues the court committed error in its calculation of defendant's net AR.

New Jersey has a strong public policy in favor of settling litigation. Gere v. Louis, 209 N.J. 486, 500 (2012); Brundage v. Est. of Carambio, 195 N.J. 575, 601 (2008) (finding settlement of litigation ranks high in our public policy). "This policy rests on the recognition that 'parties to a dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone.'" Gere, 209 N.J. at 500 (quoting Impink by Baldi v. Reynes, 396 N.J. Super. 553, 563 (App. Div. 2007)).

"Generally, a settlement agreement is governed by principles of contract law." Thompson v. City of Atlantic City, 190 N.J. 359, 379 (2007). The "interpretation and construction of a contract is a matter of law for the court

17

subject to de novo review." Kaur v. Assured Lending Corp., 405 N.J. Super. 468, 474 (App. Div. 2009) (quoting Spring Creek Holding Co. v. Shinnihon U.S.A. Co., 399 N.J. Super. 158, 190 (App. Div. 2008)).  When parties reach a settlement agreement with certain and specific terms, that agreement should be enforced.  Hagrish v. Olson, 254 N.J. Super. 133, 137 (App. Div. 1992).  An enforceable contract is created "if the parties agree on essential terms and manifest an intention to be bound by those terms."  Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992).  Execution of a release is "a mere formality, not essential to formation of the contract of settlement," therefore the failure to execute a written document does not void the original agreement or make it deficient from the outset.  Hagrish, 254 N.J. Super. at 138.  Rather, the parties' "objective intent" governs because a "contracting party is bound by the apparent intention he or she outwardly manifests to the other party.  It is immaterial that he or she has a different, secret intention from that outwardly manifested."  Ibid.

In general, settlement agreements will be honored "absent a demonstration of 'fraud or other compelling circumstances.'"  Nolan v. Lee Ho, 120 N.J. 465, 472 (1990) (quoting Pascarella v. Bruck, 190 N.J. Super. 118, 125 (App. Div. 1983)).  "Before vacating a settlement agreement, our courts require 'clear and

18

convincing proof' that the agreement should be vacated." Capparelli v. Lopatin, 459 N.J. Super. 584, 603 (App. Div. 2019) (quoting Nolan, 120 N.J. at 472).

Moreover, because "settlement agreements are judicially enforceable . . . a court ordinarily will enforce a settlement without reviewing the reasonableness of its terms." Chattin v. Cape May Greene, Inc., 216 N.J. Super. 618, 626 (1987) (citation omitted) (citing Honeywell v. Bubb, 130 N.J. Super. 130, 325 (App. Div. 1974)). Indeed, "[a] compromise is the end product of deliberation as to more than injury. It involves the skillful judgment of counsel as to liability and other factors . . . ." Pascarella, 190 N.J. Super. at 126.

We turn to plaintiff's argument that the trial court abused its discretion by concluding that defendant's net AR calculation included payments received by Entech dating back to January 1, 2020. The record does not support plaintiff's argument. We agree with the trial court's succinct findings:

> Plaintiff's interpretation cannot be gleaned from a plain reading of [the draft settlement agreement]. Nowhere in the written term[s] does the language suggest [defendant] is entitled to AR billed only after the closing date. The correspondence between [defendant's counsel] and [plaintiff's counsel]. . . demonstrat[e] a clear meeting of the minds insofar as the parties agreed [defendant] would receive net AR from billed or invoiced work from [defendant's client base] at the closing date, not conditioned on any cut-off date. Given the clear meeting of the minds, the court is unwilling to affirm plaintiff's interpretation.

19

The record shows the parties had detailed communication on this issue during settlement negotiations. Throughout the negotiations and the subsequent litigation, defendant consistently maintained he had been improperly shut out of Entech and had been paid nothing for the work he performed in 2020. When he sought a baseline date of January 1, 2020, to calculate the economic terms of the settlement, the record further shows that plaintiff did not object. Instead, plaintiff objected to backdating the SPA to January 1, 2020, because such an act could render the SPA void.

In the context of this record, we conclude there would be nothing inappropriate or illegal about setting an effective date of January 1, 2020, for the economic provisions of the parties' settlement. Similarly, there would be nothing improper about the parties agreeing to compensate defendant for work performed prior to the March 20, 2020, agreement date or the date of the actual closing. We conclude the court properly rejected plaintiff's argument about interpretation of paragraph 2(b) as being contrary to its plain language as well as the evidence in the record.

Next, plaintiff contends it was error for the court to find that the net AR calculations should include payment of all accounts receivable from the Ragan [c]lient [b]ase dating back to January 1, 2020, as it was before the settlement

was even reached. The trial court wrote in its October 26, 2020, statement of reasons:

> The court is satisfied—upon reading the email and after oral argument—the term "unbilled" is used to address any AR from [defendant's client base] for which work commenced but was neither billed nor invoiced as of the closing date. This is not some unknown variance. The parties' March 20 [a]greement, and its surrounding circumstances, clearly and unambiguously reflect a settlement in which [defendant] would receive the net AR on "any and all" work completed by Entech for [defendant's client base] during the 2020 calendar year. [Defendant] is entitled to these funds whether they were timely billed or invoiced or not.

We agree with the analysis of the trial court and conclude this argument has no merit.

Plaintiff also contends the "[t]he March 20, 2020, settlement specifically allows for deduction of accounts payable, expenses, and costs from any outstanding [AR] as of the closing date of the SPA." He also argues that the court erred by changing defendant's net AR formula several times, and by ultimately limiting deductions to only accounts payable in reaching a net AR. We disagree.

Our careful review of the record reveals sufficient credible evidence to support the court's findings on what expenses were to be included in the

A-0963-21

calculations of defendant's net AR. The trial court candidly acknowledged that its October 26, 2020, order caused misunderstanding by suggesting that "50% of the overhead costs should come out of the net AR," despite such a provision not ever being discussed or agreed to by the parties. For this reason, in its May 12, 2021 order and statement of reasons, the court corrected its prior error and determined that defendant's net AR was income generated from the defendant's client base minus any accounts payable/costs/expenses against those accounts. It explained its corrections on the record in exhaustive detail. The court, after reviewing evidence of previous profit and cost sharing practices of the parties, found its formula was fair under the circumstances, as it "require[d] defendant to bear the costs of generating funds from his own client-base while not charging either Entech or plaintiff."

Contrary to plaintiff's contention on appeal, the court did not change the net AR formula arbitrarily, but rather corrected its mistake—the inclusion of the overhead costs—as it was not agreed to by the parties. Notwithstanding that correction, plaintiff continues to argue that inclusion of overhead costs in the net AR is appropriate. The court correctly explained that the inclusion of the overhead costs was not agreed to by the parties, and that it would not be

22

A-0963-21

equitable without a similar allocation of Entech profits. In sum, the court properly calculated the net AR based on the record before it.

D.

Finally, plaintiff contends for the first time on appeal that the court erred by awarding defendant attorney's fees. We generally do not "consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available." Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). We, however, make these brief comments for the sake of completeness.

The trial court found the award of attorney's fees under Rule 1:10-3 to be proper in its statement of reasons supporting both the May 12, 2021, and November 29, 2021, orders. On the merits, the court expressly found plaintiff's refusal to pay defendant despite multiple orders to do was in bad faith. Further, the court found that plaintiff's post-settlement conduct was willful and improper and represented "repetitive attempts to renegotiate a settlement agreement the court found plaintiff already agreed to," as well as an attempt "to deny defendant his benefit of the settlement agreement." Procedurally, the court found plaintiff had waived his opposition to defendant's fee certification.

The record amply supports the court's findings on counsel fees, including plaintiff's waiver of his right to file opposition. The record also shows that

23

plaintiff vigorously contested every aspect of this litigation by repeatedly ignoring or challenging the trial court's orders each step of the way. Given the procedural history of this matter, we find no abuse of discretion by the court when it declined to extend plaintiff more time to oppose defendant's counsel fees application.

We discern no error in the court's orders of May 12, 2021, November 29, 2021, and December 30, 2021 orders, and we conclude the court's denial of reconsideration was proper.

To the extent we have not addressed them, plaintiff's remaining arguments lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(e).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0963-21