**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0389-23

TEQUESTA ECD, LLC and
HOLTEC INTERNATIONAL,

     Plaintiffs-Appellants,

v.

STEVEN ENDERS, d/b/a
ENDERS CONSTRUCTION, INC.,
and ENDERS CONSTRUCTION,
INC.,

     Defendants-Respondents.

_____

Submitted December 18, 2024 – Decided March 26, 2025

Before Judges Mayer and Puglisi.

On appeal from the Superior Court of New Jersey, Law Division, Camden County, Docket No. L-0336-22.

Weisberg Law, attorneys for appellants (Matthew B. Weisberg, on the briefs).

Briggs Law Office, LLC, attorneys for respondents (Norman W. Briggs, on the brief).

PER CURIAM

Plaintiffs Tequesta ECD, LLC (Tequesta ECD) and Holtec International (Holtec) (collectively, plaintiffs) appeal from the September 8, 2023 Law Division order granting summary judgment to defendants Steven Enders (Enders) and Enders Construction, Inc. (Enders Construction) (collectively, defendants) and dismissing plaintiffs' complaint with prejudice. We affirm.

I.

In 2017, Holtec's chief executive officer and president, Dr. Krishna Singh, approached Enders with a business arrangement to form a division of Holtec, later named Tequesta ECD, which would acquire Enders Construction, purchase property, and build luxury homes. Although ultimately the acquisition of Enders Construction did not occur, Enders accepted a position to work for Holtec as president of Tequesta ECD.[1]

In addition to Enders's $100,000 annual salary, the parties had an incentive agreement pursuant to an Administrative Memorandum (AM-031). The superseding AM-031, which governed here, provided "Enders will receive [forty percent] of the net profit from the sale on a project. If a budget overrun were to occur, then such an overrun will be charged equally to [Tequesta] and

_____

[1] Tequesta Properties, Inc. (TPI) was the sole member of Tequesta ECD.

2

. . . Enders, reducing both parties' net profit. . . . Enders'[s] portion of the net profit will be distributed to him at the end of each calendar year."

On February 26, 2021, Chris Bieberbach, a Holtec employee, emailed Enders a financial memorandum detailing financial losses associated with Tequesta ECD and proposing a garnishment of Enders's wages. Two weeks later, Martin Babos, the general manager of TPI, sent Enders another administrative memorandum detailing the "Unwinding of Tequesta ECD." Enders denied any responsibility for the losses incurred by Tequesta ECD and averred the parties never entered into a loss-sharing agreement. On March 17, 2021, Holtec terminated Enders's employment.

On February 8, 2022, TPI filed a complaint against defendants seeking damages for breach of contract, quasi-contract, unjust enrichment and promissory estoppel.

After the close of discovery, defendants moved for summary judgment seeking dismissal of TPI's complaint. Defendants alleged TPI reported no losses, defendants did not have an agreement with TPI, and TPI failed to identify any contractual provisions or promises defendants breached. TPI did not oppose the motion.

A-0389-23

On May 11, 2023, the trial judge heard argument and granted defendants' motion, dismissing TPI's complaint with prejudice. The judge found:

> The record is clear. Plaintiff has failed to identify any contractual provisions or promises made by [Enders], which obligates [Enders] to pay [forty] percent of the losses. The initial grievance said [forty] percent of net profits. There's nothing about the losses. There's a purported revision, September 11, which says that the budget runs were to occur. Such charges will apply equally to the . . . plaintiff and this defendant, Enders, reducing both parties' run. And movant indicates there is no evidence presented of any losses as a result of budget overruns. There's no evidence of any loss sharing agreement, and this has not been contested. Therefore, the motion will be granted.

On May 12, 2023, the judge entered a conforming order reflecting his decision.

TPI timely moved for reconsideration to have the court to consider its belated opposition to summary judgment and cross-moved to file an amended complaint, which the court heard on July 21, 2023. At the outset, the judge said he "was going to grant the motion for reconsideration, just for the purposes of determining the merits of this motion."

In granting summary judgment to defendants, the judge stated:

> I understand your arguments about, you know, if there's questions and the standards of summary judgment. I'm very careful about when to grant summary judgment, when not to, when to take this away from a jury, but I

4

find that it's uncontroverted that this is very specific language. And just again, for clarity purposes, I'll read it again.

. . . Enders will receive [forty] percent of net profits from the sale on a project. If a budget overrun were to occur, such overrun will be charged equally. The portion of the net profits will be distributed at the end of the year.

There's nothing to say that he's on the hook for any losses that aren't part of the profits. It's clear and unambiguous. There is the specific language—the parol evidence you indicated, I don't think is very—first of all, I don't know if you even can consider it like that this is a provision agreed upon the parties, but there isn't really a question anywhere raised by this that he would be responsible for these overruns. I can't find it's there.

I find the language to be clear and unambiguous. And as such, I will grant defendant[s]' motion, deny the plaintiff's motion.

On July 25, 2023, the court filed an order reflecting this ruling and granting plaintiffs' cross-motion to file an amended complaint substituting Tequesta ECD and Holtec as plaintiffs. No substantive changes were made in the amended complaint.

On August 10, 2023, defendants again moved for summary judgment as to the amended complaint, which plaintiffs opposed.

A-0389-23

On September 8, 2023, the trial judge heard argument and granted defendants' motion for the same reasons he previously articulated, again finding the language of the contract was clear and unambiguous and defendants were not responsible for losses alleged by plaintiffs.

On appeal, plaintiffs argue the trial court erred in granting defendants' motion for summary judgment by: (1) finding that the contract unambiguously stated Enders was not responsible for losses; (2) not allowing parol evidence of the interpretations of the agreement; and (3) in the alternative, defendants were unjustly enriched because plaintiffs relied on a promise to their detriment.

II.

We review de novo a trial court's ruling on a motion for summary judgment, applying the same standard used by the trial court. Samolyk v. Berthe, 251 N.J. 73, 78 (2022) (citing Woytas v. Greenwood Tree Experts, Inc., 237 N.J. 501, 511 (2019)). We must decide whether "there is [a] genuine issue as to any material fact" when the evidence is "viewed in the light most favorable to the non-moving party[.]" Davis v. Brickman Landscaping, Ltd., 219 N.J. 395, 405-06 (2014) (first quoting R. 4:46-2(c); and then quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)). "To decide whether a genuine issue of material fact exists, the trial court must 'draw[ ] all legitimate inferences

6

from the facts in favor of the non-moving party.'" Friedman v. Martinez, 242 N.J. 449, 472 (2020) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 480 (2016)).

"The court's function is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021) (quoting Brill, 142 N.J. at 540). "If there is no genuine issue of material fact, the court must then 'decide whether the trial court correctly interpreted the law.'" DepoLink Ct. Reporting & Litig. Support Servs. v. Rochman, 430 N.J. Super. 325, 333 (App. Div. 2013) (quoting Massachi v. AHL Servs., Inc., 396 N.J. Super. 486, 494 (App. Div. 2007)).

On de novo review, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (alteration in original) (quoting Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

A-0389-23

challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c).

"To prevail on a breach of contract claim, a party must prove a valid contract between the parties, the opposing party's failure to perform a defined obligation under the contract, and the breach caused the claimant to sustain[] damages." EnviroFinance Grp., LLC v. Env't Barrier Co., 440 N.J. Super. 325, 345 (App. Div. 2015). "[T]he burden of establishing a breach of contract rests with the party who asserts the breach." Nolan v. Control Data Corp., 243 N.J. Super. 420, 438 (App. Div. 1990).

"In order for a contract to form . . . there must be a 'meeting of the minds,' as evidenced by each side's express agreement to every term of the contract." State v. Ernst & Young, L.L.P., 386 N.J. Super 600, 612 (App. Div. 2006) (quoting Johnson & Johnson v. Charmley Drug Co., 11 N.J. 526, 538 (1953)). "An expression of assent that modifies the substance of the tender, while it may be operative as a counter-offer, is yet not an acceptance and does not consummate a contract. In the very nature of the contract, acceptance must be absolute." Ibid. (quoting Johnson & Johnson, 11 N.J. at 538).

If contractual terms are clear, "[courts] must enforce the contract as written." Graziano v. Grant, 326 N.J. Super. 328, 342 (App. Div. 1999).

Further, the contract is to be interpreted "'in accord with justice and common sense.'" Homann v. Torchinsky, 296 N.J. Super. 326, 334 (App. Div. 1997) (quoting Krosnowski v. Krosnowski, 22 N.J. 376, 387 (1956)).

If, however, the terms of a contract are ambiguous, courts "consider the parties' practical construction of the contract as evidence of their intention and as controlling weight in determining a contract's interpretation." Barila v. Bd. of Educ. of Cliffside Park, 241 N.J. 595, 616 (2020) (quoting In re County of Atlantic, 230 N.J. 237, 255 (2017)). Additionally, "[t]he judicial task is simply interpretative; it is not to rewrite a contract for the parties better than or different from the one they wrote for themselves." Kieffer v. Best Buy, 205 N.J. 213, 223 (2011).

There is no dispute the parties entered into a written contract that provided:

> Enders will receive [forty percent] of the net profit from the sale on a project. If a budget overrun were to occur, then such an overrun will be charged equally to T[equesta] and . . . Enders, reducing both parties' net profit. . . . Enders'[s] portion of the net profit will be distributed to him at the end of each calendar year. . . . Enders is entitled to share a portion of his profit with his other key associates at his sole discretion.

We agree with the trial court's determination the written language of the agreement was clear and unambiguous. The contract provided for a reduction

in Enders's net profits if there were a budget overrun. Nothing required Enders to share in losses that fell below the profit. As such, the trial court correctly granted defendants' motion for summary judgment.

Plaintiffs next argue the trial court erred by "purportedly inserting meaning as a matter of law to the portion of the provision, 'reducing the parties' net profit,' to suggest that [defendants] cannot be liable for losses" and asserts this matter should have been left for a jury aided by parol evidence for interpretation.

Under New Jersey law, "where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written." Schor v. FMS Fin. Corp., 357 N.J. Super. 185, 191 (App. Div. 2002) (quoting Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43 (1960)). "When presented with an unambiguous contract, the court should not look outside the 'four corners' of the contract to determine the parties' intent, and parol evidence should not be used to alter the plain meaning of the contract." Namerow v. PediatriCare Assocs., 461 N.J. Super. 133, 140 (Ch. Div. 2018).

"The court has no right 'to rewrite the contract merely because one might conclude that it might well have been functionally desirable to draft it differently.'" Karl's Sales & Serv., Inc. v. Gimbel Bros., 249 N.J. Super. 487,

493 (App. Div. 1991) (quoting Levison v. Weintraub, 215 N.J. Super. 273, 276 (App. Div. 1987)).  The parol evidence rule excludes evidence which "is offered for the purpose of 'varying or contradicting' the terms of an 'integrated' contract." Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 302 (1953).

Here, we agree with the trial judge's determination that the language of AM-031 was clear and unambiguous.  Because the contract left no room for interpretation or construction of the agreement, there was no need to consider parol evidence.

In the alternative, plaintiffs argue defendants are nevertheless liable under a theory of promissory estoppel.  "The doctrine of promissory estoppel is well-established in New Jersey."  Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc., 307 N.J. Super. 461, 468 (App. Div. 1998) (citing Malaker Corp. Stockholders Protective Comm. v. First Jersey Nat'l Bank, 163 N.J. Super. 463, 479 (App. Div. 1978)).  "The essential justification for the doctrine of promissory estoppel is the avoidance of substantial hardship or injustice were [a] promise not to be enforced."  Malaker Corp., 163 N.J. Super. at 484.

"Promissory estoppel is made up of four elements:  (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3)

11

reasonable reliance; and (4) definite and substantial detriment." Toll Bros. v. Bd. of Chosen Freeholders of Burlington, 194 N.J. 223, 253 (2008).

Here, plaintiffs failed to show Enders made a "clear and definite promise" to be personally responsible for all losses outside of the provisions contained in AM-031. Singh, Babos and Bieberbach testified during their depositions that Enders agreed to share in any losses, but could only point to AM-031 as evidence of that promise. As the trial judge found, AM-031 did not reflect that arrangement. Because plaintiffs could not demonstrate the first element, their claim of promissory estoppel failed.

Plaintiffs' claim of unjust enrichment meets a similar fate. In order to recover based on unjust enrichment a plaintiff must show a "defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554 (1994). Therefore, plaintiffs must show that they "expected renumeration from defendant at the time [they] performed or conferred a benefit on the defendant and that the failure of renumeration enriched defendant beyond its contractual rights." Ibid.

Plaintiffs argue they paid Enders a salary with the expectation he would share in any loss, and therefore he was unjustly enriched by not having to do so. We disagree for the same reasons plaintiffs' other claims failed. Enders entered

12

into an employment contract requiring him to reduce his profits by any budget overrun, not to reimburse plaintiffs for any losses. Thus, plaintiffs could not demonstrate Enders was enriched beyond his contractual rights.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0389-23